130 So.2d 341

William N. ANDERSON et al.

v.

**CITY OF VESTAVIA HILLS.**

6 Div. 591.

Supreme Court of Alabama.

May 11, 1961.

Wm. M. Acker, Jr., A. Lamar Reid and Smyer, White, Reid & Acker, Birmingham, for appellants.

Sam C. Pointer, Sam C. Pointer, Jr., and Brown, Pointer & Pointer, Birmingham, for appellee.

STAKELY, Justice.

This is an appeal pursuant to § 552, Title 37, Code of 1940, from a verdict and decree of the circuit court fixing a municipal improvement assessment lien in the amount of $1,200 in favor of the City of Vestavia Hills, Alabama (appellee), a municipal corporation, against a certain parcel of real estate owned by William N. Anderson and Mary Ann Anderson Rush (appellants). Under improvement ordinance No. 50 adopted by the City of Vestavia Hills, the City of Vestavia Hills originally fixed the amount of the assessment by proration on a front footage basis at $1,472.24. There was an appeal by the owners of this lot to the circuit court by filing bond in compliance with § 545, Title 37, Code of 1940. At the time the pleadings were settled and before trial began the City of Vestavia Hills filed in open court a copy of the entire transcript of proceedings by the City of Vestavia Hills in regard to its improvement ordinance No. 50. This transcript included the following items:

1. The engineers description of all of the proposed sewer lines (showing that appellants' property would actually be served only by a short extension of a preexisting sewer line and would not be connected with the major sewer lines being installed).

2. The names of all persons allegedly making initial oral protests against the project and formal protests of the assessments.

3. The plans and specifications for and the bids made on the entire sewer project.

4. The entire assessment roll showing (a) the names of the property owners, (b) the descriptions of the property, and (c) the amounts of the assessments.

The owners of the lot (appellants) thereupon filed a motion to strike certain portions of the transcript on the ground that the portions objected to did not concern the property of the owners of this lot within the limiting language of § 548, Title 37, Code of 1940. This motion was overruled by the court.

Thereupon the property owners (appellants) filed pleas one, two and three. Pleas one and two amounted to the general issue in that they denied the allegations both impliedly and actually contained in the transcript (considered as the complaint in the case), and that the amount of the assessment did not exceed the increased value of the property by reason of special benefits derived from the improvement.

Plea three set up the affirmative defense based upon the alleged fact that only one short sewer line, entirely separate, from the main sewer system installed under improvement ordinance No. 50 actually served the particular lot of these particular owners.

Demurrers to plea three were sustained. Plea three was then amended and there were added pleas four and five. These additional pleas sought to contest the assessment on the ground that certain costs were included in the assessment which were not properly chargeable under the law. Demurrers were sustained as to plea three as amended and to pleas four and five. The case then proceeded to trial upon the transcript (complaint) and pleas one and two.

After verdict and decree setting the amount of the assessment at $1,200, the owners of this particular lot filed a motion for a new trial which was overruled. This appeal followed.

Appellants seek a reversal on the grounds, respectively, (1) that the court erred in overruling their motion to strike certain portions of the transcript of proceedings filed by the city, (2) that the court erred in refusing certain of their requested written charges and (3) that the evidence does not support the jury's verdict fixing the amount of special benefits at $1,200.

I. Appellants claim error in the failure of the court to grant their motion to strike portions of the transcript claimed to be irrelevant, immaterial and surplusage. We think that this ground is not well taken. Section 548, Title 37, Code of 1940, provides as follows:

"Upon the filing with and the approval of the appeal bond, the clerk, upon notice thereof, shall immediately send to the clerk of the circuit court, or other court to which the appeal may be taken, a transcript of all the proceedings of the municipality relating to such assessment, so far as the same concerns the property of the appellant. Such transcript shall contain a description of the property of such party or parties, the same to be described as accurately as possible according to the map of the city or town in common use, if there be such map; the name of the owner or owners of such property and the amount of the assessment."

It is insisted that the words "so far as the same concerns the property of the appellant" means exactly what these words say.

Under § 550, Title 37, Code of 1940, the transcript is equivalent to a complaint.— Cox v. City of Birmingham, 21 Ala.App. 341, 108 So. 622 [certiorari denied 214 Ala. 584, 108 So. 625].

It is argued that under § 43, Title 7, Code of 1940, a complaint is always subject to a motion to strike those portions which are prolix, irrelevant, immaterial or surplusage.

Upon due consideration, however, we do not agree with the contentions of the appellant. As pointed out under § 550, Title 37, Code of 1940, the transcript is permitted to serve as a complaint. The ingredients of the city's "cause of action" are found in the extensive requirements imposed by §§ 512–538, Title 37, Code of 1940. One of the conditions to a valid assessment is that the city by resolution fix the amount of assessment against each lot described in the assessment roll (§ 538, Title 37, Code of 1940, also §§ 529–537, Code of 1940). Another requirement is that the costs of a sewer improvement be assessed "in fair proportion against the frontage of the property drained by said sewer system." —§ 525, Title 37, Code of 1940.

■ In Chenault v. City of Russellville, 233 Ala. 60, 169 So. 706, where the property owner contested the assessment by proof of failure of the city to make and file the required assessment roll, it was held that the city could cure this omission by filing an amended transcript which included the assessment roll. It seems to us, therefore, that there would be no error in initially including the assessment list in the transcript. Besides it would have been impossible to determine from the record where the costs were assessed under § 525 "in fair proportion against the frontage of the property drained." Obviously this latter determination must be made on the basis of the entire assessment roll. The phrase appearing in § 548 must be construed in pari materia with §§ 549 and 550. See Hamrick v. Town of Albertville, 228 Ala. 666, 155 So. 87. In the light of the conclusion that the transcript shall act as the pleadings, we have already discussed the effect of § 550. Section 549 provides that the transcript when introduced into evidence, shall be prima facie evidence of the correctness of the assessment. For such to be the case it must obviously contemplate that the transcript show compliance with all the statutory steps required for a valid assessment. Accordingly, the entire assessment roll from which the frontage proration was determin-

ed against the lot of the appellants, is a matter which does "concern the property of the appellants." We note that in Hood v. Bessemer, 213 Ala. 225, 104 So. 325, this court approved the transcript containing the resolution under present § 538, that is the resolution fixing the amount of assessment against each lot in the assessment roll.

■ II. It is argued that the court was in error in refusing to give charges 13, 19, 21 and 22. Upon careful consideration, however, we believe that the propositions involved in these charges were fairly and substantially given to the jury in the court's oral charge and in other charges requested by the appellants. Charges 13, 19, 21 and 22 will be set out in the report of the case. We see no need to set out here the oral charge. In the court's oral charge and in special charges given by the court at the request of the appellants, the court discussed the problem of special and general benefits. The court read to the jury § 223 of the Constitution of Alabama, which provides as follows:

"No city, town, or other municipality shall make any assessment for the cost of sidewalks * * * paving, or for the cost of the construction of any sewers against property abutting on such street or sidewalk so paved, or drained by such sewers, in excess of the increased value of such property by reason of the special benefits derived from such improvements."

In the case of City of Ozark v. Thomas et al., 231 Ala. 538, 166 So. 424, this court held that an assessment for street improvement cannot be based on general increase of market value because of improvement or on general enhancement of value of property constituting difference in market value before and after improvement but must be based on super added value over and above general enhanced value.

In City of Ozark v. Byrd, 225 Ala. 332, 143 So. 168, 169, in referring to the term

"special benefits" which appears in § 223 of the constitution, this court said,

" '* * * Special benefits were inserted for some purpose, and it is evident that the assessment cannot be predicated upon a general enhancement of the value of the property, the difference in the market value before and after the improvement, regardless of a special benefit to the owner resulting from said improvement and which increased the value of the property. * * *.' "

While it is true that we do not find the expression "super added value" in the oral charge of the court, we think, as stated above, that the oral charge clearly shows that the court in explaining the difference between general benefits and special benefits, sufficiently explained this so-called "super added value."

It is significant that no exceptions were taken by either side to the oral charge of the court.

The written given charges requested by the defendants will also be set out in the report of the case. These charges speak for themselves.

III. This brings us to the question as to whether the verdict was contrary to the great weight of the evidence. The evidence showed without conflict that the lot owned by Mrs. Rush and her husband was on what may be described as the outer edge of the plat of the City of Vestavia Hills. According to Mrs. Rush this lot at the time of its purchase by Mrs. Rush and her husband had a septic tank which was adequate and "operating perfectly." According to her testimony this lot was reasonably worth $21,000 before the sewer line was installed and $21,000 immediately after the sewer line was installed. In other words according to her testimony, there was no increase in the market value of the property as a result of the sewer line.

According to the testimony of Walter Shoel, Jr., who was a qualified engineer,

he recognized that the lot in question was located on Pine Crest Drive at a point 65 feet from the end of the sewer line, which had already existed at Pine Crest Drive for sometime before the enactment of improvement ordinance No. 50. He expressed the opinion that it would have cost approximately $700 to lay an eight inch line (as was actually laid), from the end of the pre-existing line in Pine Crest Drive to the lot here involved. His further testimony showed that the soil is rocky in the area of Vestavia Gardens and that septic tanks are sometimes unsatisfactory.

Alvan Outland, witness for the plaintiff, was in the real estate business and had had experience in appraisal work. In his judgment the market value of the property was increased by $350 by virtue of the installation of the sewer lines. He based his appraisal on comparable value of other lots in the Plat and also on the fact that the lot of Mrs. Rush was only 65 feet from the pre-existing sewer line.

The testimony of Guy Tate, Sanitary Engineer and Director of the Jefferson County Health Department, witness for the owners, tended to show that there were several septic tanks overflowing and running on to the streets in 1953, that he did not know how far the lot of Mrs. Rush was from the area of trouble. He testified that one overflowing septic tank can cause danger of communicable disease in a large area but that there had been no reports of typhoid, hepatitis or other diseases from such condition.

J. F. Steiner, witness for the city, testified that he had been in the real estate business for 30 years, making appraisals since 1947. At the request of the City of Vestavia Hills he made an appraisal of the property of Mrs. Rush. According to his testimony this property was worth $20,000 before the sewer line was installed and $22,500 after the sewer line was installed. According to this witness, assuming that there was septic tank trouble on six or eight lots some 200 or 300 feet from the property of Mrs. Rush (this was over the

objection of appellants as not being hypothesized on the evidence), it would have a very injurious effect on the price. The elimination of trouble re-established the price by eliminating the depreciation.

In rebuttal the appellants offered as a witness Mrs. A. F. Graham. She testified in substance that she lived in the general area and had a mushy area in her yard which the health department found was not septic effluent. It seems her property was tied into the new sewer line and the use of septic tank discontinued and there was still a mushy area in her yard. Mrs. Graham further testified that there had never been at any time any septic tank effluent flowing in front of her property or in close proximity to it.

At the outset with reference to a motion to set aside the verdict on the ground that is contrary to the weight and sufficiency of the evidence, this court said:

"Verdicts are presumed to be correct and no ground of new trial is more carefully scrutinized or more rigidly limited than that the verdict is against the weight of the evidence. It is recognized by this court that when the presiding judge refuses, as here, to grant a new trial, the presumption in favor of the correctness of the verdict is strengthened. After allowing all reasonable presumptions in favor of the correctness of the verdict, we cannot say that the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust."—Taylor v. Thompson, Ala., 122 So.2d 277, 279. See also Fairview Villa v. City of Montgomery, Ala., 124 So.2d 67.

■ The evidence of the city on the question of special benefits was two fold. First, the introduction of the transcript setting special benefit to the property in question as at least $1,473.24, made out a prima facie case for the city and shifted to the plaintiffs the burden of proving that the assessment was excessive. City of Montgomery v. Mott, 266 Ala. 422, 96 So.

2d 766. In the last cited case it was held that "a jury question was clearly raised" where the city offered only its transcript and no other testimony.

In Stovall v. City of Jasper, 218 Ala. 282, 118 So. 467, 472, this court, after noting that the ultimate issue was one of special benefits, approved the method of showing, "the value of the special benefits by reason of the improvements in question, by allowing the witness to testify to the value of the specific property before and after the improvements, such evidence to be considered [by the jury] with all the other evidence or matters contributing to the increase or diminution of its value by reason of the improvements." See also Hamrick v. City of Albertville, 219 Ala. 465, 122 So. 448; Hood v. Bessemer, 213 Ala. 225, 104 So. 325.

It is claimed that the testimony of the witness Steiner was based entirely upon the elimination of a community health hazard. The record shows that Steiner expressly denied a question going to this point. He did testify that while he made reference to a problem of health, yet the Rush property itself had a sanitary sewer problem. From our examination of the record it appears that questions asked by the appellants themselves about community health problems, were answered by Steiner with reference to the effect upon the particular lot involved.

It is claimed by the appellant that Steiner testified that in his opinion the health hazard had depreciated the value of all other houses in the general area just as much as it had the house of Mrs. Rush. The record does not appear to us to sustain this viewpoint. The nearest thing to it is Steiner's answer to a hypothetical question asked him by the appellants, in which he gave the opinion that a house purchased in 1953 for $20,000 would at the present time, after correction of all objectionable features in the neighborhood which had been arrested, be worth approximately $23,000. When all of his testimony is read in context, we do not think that

his testimony shows that the amount of enhancement from the sewer was common to all property in the area. On the contrary his testimony shows that each piece of property must be analyzed separately.

It is our conclusion from our careful consideration of the record that the verdict of the jury cannot be said to be contrary to the great weight of the evidence. In the case of City of Ozark v. Thomas et al., 231 Ala. 538, 166 So. 424, this court said:

"The verdict was amply supported by the evidence, not to say that it preponderated in accord with it. We do not weigh the evidence on motion for new trial, which was overruled by the trial court, except to see that its weight was not greatly contrary to the verdict. Such is not the situation here."

Upon a consideration of the various questions presented, we conclude that the judgment of the lower court should be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.